UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

TAMARA L. PHILLIPS,            No. 7-13-11987 TA

    Debtor.

JEFFREY T. BALDWIN,

    Plaintiff,

v.            Adv. No. 13-1079 T

TAMARA L. PHILLIPS,

    Defendant.

## MEMORANDUM OPINION

Before the Court[1] is whether to grant Debtor's request to avoid four liens on her house, either because the subject debt has been paid or pursuant to § 522(f).[2] Jeffrey T. Baldwin ("Baldwin") argues in opposition that the underlying debts are still due and are for domestic support, so § 522(f)(1)(A) prevents avoidance. Lynda M. Latta ("Latta") argues that her attorney charging lien is not a judicial lien and cannot be avoided under § 522(f). For the reasons set forth below, the Court finds that Baldwin's liens are avoidable under § 522(f) but Latta's lien is not.

---

[1] Debtor's lien avoidance motion was brought in the main bankruptcy case, while issues relating to the amounts owed were litigated in the adversary proceeding. This opinion will be entered on both dockets.

[2] Unless otherwise noted, all statutory references are to 11 U.S.C.

I. FACTS

The Court finds the following facts:[3]

Baldwin and Phillips were married on May 8, 1994. They have two children. They were divorced effective September 8, 2004, as set out in a Final Decree of Dissolution of Marriage ("Divorce Decree") entered by the New Mexico Second Judicial District Court, no. DM-2003-478 (the "Divorce Case"). At that time Phillips was granted custody of both children and had a gross monthly income of $600, while Baldwin had a gross monthly income of $1,239, and was required to pay $339 in child support.

Custody, visitation, and child support rights were hotly contested in the Divorce Case. One issue was the right to claim the children as dependents on the parties' income tax returns. The Divorce Decree provided that each party could claim one child on his or her income tax return, beginning with the 2004 tax year. This arrangement was confirmed in a June 23, 2005 order issued by the state court, which clarified that the tax claims were "for all purposes," including the dependency deduction and the earned income credit."[4] The order required Phillips to amend her 2004 income tax return to remove the claim of their son as a dependent, so Baldwin could claim their son on his return.

---

[3] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket"). In addition, at trial the parties stipulated that the exhibits submitted in connection with Baldwin's motion for summary judgment, filed in the adversary proceeding, were part of the record for the matters addressed in this opinion.

[4] The "EIC."

On November 18, 2005, the state court entered another order (the "2005 Order") sanctioning Phillips a total of $850. $500 of this amount was because Phillips had not amended her 2004 income tax return as required. The remaining $350 was for Phillips's refusal to allow an inventory of personal property.[5] The 2005 Order provided that Phillips could purge herself of the $500 sanction if she filed the required amended tax return before January 15, 2006. Phillips did so. Surprisingly, however, Phillips later filed a second amended 2004 tax return and once again claimed their son as a dependent for EIC and other purposes.

On June 15, 2006, the state court entered an order (the "2006 Order"), giving Phillips the right to claim the EIC for their son if Baldwin did not do so.[6] The order required Phillips to file her tax returns after Baldwin, so she could see whether Baldwin claimed the EIC.

On July 27, 2009, the state court entered an order (the "2009 Order") finding, inter alia, that Phillips owed Baldwin $860 for her share of the children's medical expenses Baldwin had paid. The court ordered Phillips to pay this amount over time, which she did.

On April 16, 2010, the state court entered a $500 judgment in favor of Baldwin for the unpurged sanction in the 2005 Order.

Finally, in an order entered September 1, 2010 (the "2010 Order"), the state court entered a judgment against Phillips and in favor of Baldwin for $9,997.40. Most of this judgment resulted from Phillips's wrongful use of the son's social security number on her 2008 and 2009 tax returns, which prevented Baldwin from claiming their son as a dependent in those years. The resulting loss was $9,108.40. The remaining $889.00 was Phillips's share of the children's uninsured medical expenses Baldwin had paid.

---

[5] There is no dispute the $350 sanction was purged.
[6] According to the 2006 Order, if Phillips's claim of their son as a dependent resulted in any loss to Baldwin, then Phillips was required to pay Baldwin the amount of the loss.

Case 13-01079-t    Doc 33    Filed 10/21/14    Entered 10/21/14 13:47:09 Page 3 of 12

To collect the amounts due under the orders described above, Baldwin filed Lien ## 3-5 below, encumbering Phillips' house. The parties have stipulated that all amounts secured by Lien #4 (the $860 from the 2009 Order) have been paid in full, and that $889 of the amount secured by Lien #3 has been paid. That leaves $9,109.40 of Lien #3 and all $500 of Lien #5 in dispute.

Latta represented Phillips in the divorce. In May, 2009 Latta asserted Phillips owed her $7,267.04, plus interest.[7] To collect the bill, Latta filed Lien #2 below, purporting to encumber Phillips' real property in Bernalillo County, New Mexico.

Phillips only real estate is her house, located at 2713 Morris NE, Albuquerque, NM 87112 (the "House"). According to Phillips' bankruptcy schedules, the House has a fair market value of $141,000. Neither Latta nor Baldwin disputed this figure or introduced evidence of a different value.

The House currently is encumbered by the following claimed liens and mortgages:

| Lien # | Creditor | Encumbrance | Amount | Date Filed |
|---|---|---|---|---|
| 1 | Metlife Home Loans | First mortgage | $134,000 | 10/2008 |
| 2 | Latta | Second Notice of Lien | $7,267.04 | 05/2009 |
| 3 | Baldwin | Transcript of Judgment | $9,997 | 01/2012 |
| 4 | Baldwin | Transcript of Judgment | $860 | 02/2012 |
| 5 | Baldwin | Transcript of Judgment | $500 | 02/2012 |

Phillips elected to use the federal exemptions under § 522(b) and claimed a homestead exemption of $14,000, per § 522(d)(1).

---

[7] In her objection to Phillips' avoidance motion, Latta asserted that the current amount owed is $18,402. This works out to an interest rate of about 20% per year.

-4-

## II.  DISCUSSION

A.  The Liens in Question Impair Phillips' Homestead Exemption.

Section 522(f) provides in pertinent part:

(f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
    (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);

…

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of--
    (i)    the lien;
    (ii)   all other liens on the property; and
    (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;
exceeds the value that the debtor's interest in the property would have in the absence of any liens.
    (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

Phillips' house is worth $141,000.  Subtracting the first mortgage leaves "equity" of $7,000.  Each of the liens at issue, therefore, impairs Phillips' $14,000 homestead exemption.

B.  Phillips May Avoid Baldwin's Liens.

    1.  Liens Securing Domestic Support Obligations Cannot be Avoided Under § 522(f).  Section 522(f)(1)(A) provides that a debtor may avoid a lien securing a debt of the kind specified in § 523(a)(5).  Section 523(a)(5) excepts from the general discharge debts for a "domestic support obligation."  This term is defined in § 101(14A):

The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

-5-

(A) owed to or recoverable by--
  (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
  (ii) a governmental unit;
(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of--
  (i) a separation agreement, divorce decree, or property settlement agreement;
  (ii) an order of a court of record; or
  (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

2. <u>Determining Whether a Debt is a Domestic Support Obligation</u>. Whether a given debt is in the nature of alimony, maintenance, or support is an issue of federal law. *Young v. Young* (*In re Young*), 35 F.3d 499, 500 (10th Cir. 1994). Although federal law controls, state law "provide[s] guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." *Cummings v. Cummings*, 244 F.3d 1263 (11th Cir. 2001), citing *In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996).

"In determining whether an obligation is in the nature of support, the Court must not rely on labels the parties or the state court give to an obligation." *Brown v. Brown* (*In re Brown*), 2013 WL 5376541, *5 (Bankr. D.N.M. 2013). Instead, courts should undertake a two-pronged analysis "into both the parties' intent and the substance of the obligation." *Crum v. Howe* (*In re Howe*), 2007 WL 2509021 (Bankr. D.N.M. 2007), citing *Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717 (10th Cir. 1993). The Tenth Circuit stated:

> [A] bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation to determine whether the obligation is actually in the nature of alimony, maintenance or support ... Congress, by directing federal courts to determine whether an obligation is actually in the nature of alimony, maintenance, or support sought to ensure that § 523(a)(5)'s underlying policy is not undermined either by the treatment of the obligation under state law or by the label which the parties attach to the obligation.

*Sampson*, 997 F.2d at 722–23 (citations omitted).

For the first prong (intent of the parties), if the operative document is a court order the bankruptcy courts should attempt to glean the intent of the state court. *See Morel v. Morel* (*In re Morel*), 983 F.2d 104, 105 n. 3 (8th Cir. 1992) (in a contested divorce proceeding the bankruptcy court must examine the intent of the state court); *In re Andrews*, 434 B.R. 541, 549 (Bankr. W.D. Ark. 2010) (the intent of the state court is a primary focus when the bankruptcy court examines whether a debt is a domestic support obligation).

For the second prong (substance of the obligation), courts have looked at a number of factors. *Sampson* identified four: (1) if, under the circumstances, the spouse needs support; (2) if there are minor children and an imbalance of income; (3) if payments are made directly to the recipient and in installments over a substantial period of time; and (4) if the obligation terminates on remarriage or death. *Sampson*, 997 F.2d at 722, citing *In re Goin*, 808 F.2d 1391, 1392–93 (10th Cir. 1987).[8]

Whether an obligation is in the nature of support is determined as of the time it arose, not later, regardless of the ex-spouse's current needs or circumstances. *Young*, 35 F.3d at 500.

---

[8] One treatise lists eight factors courts have considered: (1) labels in the agreement or order; (2) income and needs of the parties at the time the obligation became fixed; (3) amount and outcome of property division; (4) whether the obligation terminates upon debtor's death or remarriage or emancipation of children; (5) number and frequency of payments; (6) waiver of alimony or support rights in agreement; (7) availability of state court procedures to modify the obligation or enforce it through contempt remedy; and (8) tax treatment of obligation. 4 Collier on Bankruptcy ¶ 523.11[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Case 13-01079-t    Doc 33    Filed 10/21/14    Entered 10/21/14 13:47:09 Page 7 of 12

3. <u>Lien #3 ($9,108.40) is Avoidable</u>. Lien #3 secures a debt to compensate Baldwin for Phillips wrongfully claiming both children as dependents in 2008 and 2009. The effect of Phillips' claims was to deprive Baldwin of the EIC for those years, resulting in a loss of $9,108.40.

    a. <u>Intent of the Parties/Court</u>. When Phillips and Baldwin agreed in 2004 that each could claim one child as a dependent for all tax purposes, Phillips was the custodial parent of both children and had a gross monthly income of $600. In contrast, Baldwin did not have custody of the children, had a gross monthly income of $1,239, and was required to pay Phillips $339 a month in child support. There is no indication, in the Divorce Decree or any of the state court orders, that Phillips had to support Baldwin or that the agreement allowing Baldwin to claim one dependent was intended by anyone to be in the nature of domestic support. Rather, it appears that the allocation of tax rights and attributes was a form of property division.[9] The Court concludes the parties did not intend the agreement about claiming children as dependents to be in the nature of support for Baldwin, nor did the state court intend the $9,108.40 judgment to be in the nature of support for Baldwin.

    b. <u>Substance of the Obligation</u>. The Court also concludes that the substance of the $9,108.40 debt is not in the nature of support. Applying the four *Sampson* factors, the Court finds that when the parties agreed on an allocation of tax attributes relating to their minor children, Baldwin was not in need of support; that there was no imbalance of income that needed to be addressed by giving Baldwin the right to claim one child as a dependent; that

---

[9] A state court child support hearing office found, in a June 22, 2011 Child Support Hearing Officer Report, that the $9,997.40 judgment was not child support. While the label a court assigns an obligation is not dispositive, it provides some insight into the court's intent. *See* 4 Collier on Bankruptcy ¶ 523.11[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Case 13-01079-t    Doc 33    Filed 10/21/14    Entered 10/21/14 13:47:09 Page 8 of 12

there were no payments to be made directly to Baldwin in installments over a substantial period of time; and that Baldwin's right to claim one child as a dependent did not terminate on remarriage or death. The additional factors identified in *Colliers* also indicate that the EIC agreement is not a domestic support obligation.

Analyzing the $9,108.40 obligation as set out in *Sampson*, the Court concludes that Baldwin's Lien #3 does not secure a domestic support obligation.

        c.    <u>Lien #3 is a Judicial Liens</u>.  Finally, there is no question that Lien #3 is a judicial lien.  *See, e.g., In re Vaughan,* 311 B.R. 573, 583 (10th Cir. BAP 2004), *affirmed*, 241 Fed. Appx. 478 (10th Cir. 2007) (lien obtained by recording a judgment is a judicial lien).

Lien #3 is avoidable under § 522(f).

    4.    <u>Lien #5 ($500) is Avoidable</u>.  Since the parties' agreement about claiming their children as dependents was not in the nature of support for Baldwin, it follows that the $500 sanction imposed on Phillips for breaching that agreement is not a domestic support obligation. As a result, Lien #5 (Baldwin's $500 judgment lien) is avoidable under § 522(f).

    C.    <u>Phillips May Not Avoid Latta's Lien</u>.

        1.    <u>Attorney Charging Liens are Not Judicial Liens</u>.  Case law makes clear that attorney charging liens, whether arising by statute or common law, are not "judicial liens" and therefore cannot be avoided under § 522(f).[10]  *See e.g., In re Washington,* 242 F.3d 1320 (11th Cir. 2001) (common law charging lien is not a judicial lien because it arises by operation of law without judicial action); *In re Benbow,* 496 B.R. 605, 612 (Bankr. D. Colo. 2013) (statutory charging lien is not a judicial lien); *In re Levi,* 2007 WL 3046661 (Bankr. M.D. Fla. 2007)

---

[10] The term "judicial lien" means a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."  § 101(36).

-9-

(following *Washington)*; *In re Scott,* 400 B.R. 257 (Bankr. C.D. Cal. 2009) (statutory charging lien not a judicial lien); *In re O'Connell,* 167 B.R. 928, 931 (Bankr. D. Mont. 1994) (statutory charging lien is not a judicial lien); *In re Bingham,* 344 B.R. 648 (Bankr W.D. Okla. 2006) (debtor may not use § 522(f) to avoid a properly perfected statutory attorney charging lien); *In re Fischer,* 129 B.R. 285, 285 (Bankr. M.D. Fla. 1991) (equitable lien on home is not a judicial lien); *In re Sacco,* 99 B.R. 647, 651-52 (Bankr. W.D. Pa. 1989) (common law charging lien is not a judicial lien); *In re Sacerdote,* 74 B.R. 487 (Bankr E.D. Pa. 1987) (same).

        2.    <u>Lien #2 is Not a Judicial Lien</u>.  Latta filed a Second Notice of Lien in the Bernalillo County real estate records, asserting a charging lien on Phillips' real property to secure unpaid legal fees.  Latta's lien is not avoidable under § 522(f) because, as made clear by the case law cited above, the lien is not a judicial lien.[11]

    D.    <u>Attorney's Fees</u>.

Baldwin argues he should recover his attorney's fees incurred in the adversary proceeding and that those fees and costs should be declared nondischargeable either under § 523(a)(5) or (a)(15).  The Court concludes that Baldwin is not entitled to a judgment for the attorney fees he incurred.

---

[11] There are four requirements for a valid New Mexico attorney charging lien:  There must be a valid contract between the attorney and client; there must be a fund recovered by the attorney, meaning the charging lien can only attach to fruits of the attorney's skill and labor; notice must be given to all concerned parties of the intention to assert a lien against any judgment or recovery; and the lien must be asserted timely.  *Sowder v. Sowder*, 127 N.M. 114, 117-18, 977 P.2d 1034, 1038-39 (1999).  An attorney charging lien is not a mortgage and is not akin to any other statutorily recognized lien on real property.  *Philipbar v. Philipbar*, 127 N.M. 341, 980 P.2d 1075 (1999).  Neither party addressed whether Latta's claimed lien complies with New Mexico law, and in particular whether the House can be considered a "fund" recovered by Latta.  Since Phillips' sole ground for seeking to avoid Latta's lien was § 522(f), the Court makes no finding or conclusion on that issue.

-10-

Where state law or a fee-shifting agreement so provides, the party in a § 523(a)(5) or a § 523(a)(15) action who succeeds in proving a debt nondischargeable may be awarded his or her attorney's fees by the bankruptcy court. *See Busch v. Hancock* (*In re Busch*), 369 B.R. 614, 624-27 (10th Cir. BAP 2007). No bankruptcy statute or rule awards fees to a creditor who successfully protects a debt from discharge. *Taylor v. Taylor* (*In re Taylor*), 478 B.R. 419, 429 (Bankr. D.N.M. 2012).

The Divorce Decree does not contain an attorney fee-shifting agreement. Rather, it states that Baldwin shall assume and timely pay and hold Phillips harmless from his attorney fees. Neither party has directed the Court to any state statute that would permit the award of attorney fees. Without a provision in the Divorce Decree or applicable state law to support the request for attorney fees, the Court cannot award fees to Baldwin.

### III. CONCLUSION

Baldwin's liens should be avoided (## 3 and 5) or released because of payment (#4).[12] Latta's lien (#2) cannot be avoided under § 522(f). Baldwin is not entitled to an award of attorney's fees in the bankruptcy case or adversary proceeding. The Court will enter a judgment and order consistent with this memorandum opinion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 21, 2014

---

[12] *See* N.M.S.A. 1978, § 39-1-6.1 (when a judgment secured by a judgment lien has been paid, the creditor must file a release the lien).

-11-

Copies to:

Michael K. Daniels
P.O. Box 1640
Albuquerque, NM 87103-1640

Walter L. Reardon, Jr.
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

-12-